```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

JOSE A. ALMEIDA,                )
     Plaintiff,                  )
                                 )
          v.                     )
                                 )
                                 ) CIVIL ACTION NO. 12-11476-PBS
                                 )
FALL RIVER POLICE STATION,       )
ET AL.,                          )
     Defendants.                 )


<u>MEMORANDUM AND ORDER</u>

August 13, 2012

SARIS, U.S. D.J.

## I. Introduction

On July 30, 2012 , plaintiff Jose A. Almeida ("Almeida"), an inmate at the Bristol County House of Corrections in North Dartmouth, Massachusetts, filed a self-prepared civil rights complaint presumably under 42 U.S.C. § 1983. He alleges that the defendants used perjured testimony against him, and that he was maliciously prosecuted for armed robbery.[1]

The list of defendants is not clear. He names as defendants: (1) the Bristol District Attorney's office ("DA's Office"); (2) the Fall River Police Station ("FR Police"); and (3) Zarrora, Inc. ("Zarrora")[2]; however, Almeida also lists the

---

[1] Almeida actually claims to have filed this Complaint in mid-March, 2012. He claims that the Complaint was, for some unknown reason, sent back to him, and he has documentation of this. Compl. at 5. The Court's CM/ECF docket does not reflect any prior filing by Almeida.

[2] Almeida spells the name of this defendant at least three different ways throughout the complaint and accompanying

"Bristol County's Government Agency's [sic]" as a separate governmental defendant. He fails to set forth the basis for including the Bristol County Government as a defendant, and, presumably, this identification was meant to qualify that the DA's Office and the FR Police are agencies of Bristol County. Further, he appears to name Joseph Zarrora, as the owner of Zarrora, and John Rose ("Rose"), a police officer in the FR Police.

Accompanying the Complaint, Almeida filed a Memorandum of Law. That document is not entirely coherent or legible. From what can be discerned from these pleadings, the crux of the matter involves a criminal charge brought against Almeida for armed robbery and prosecuted by the DA's Office. Compl. at 6.

On August 7, 2008, a man named Afif Elbaba ("Elbaba"), who at the time was an employee of Zarrora, was robbed of over $9,000.00. Id. at 6, 8. Almeida was arrested for armed robbery on September 13, 2008, and was subsequently charged with the crime, with bail set at $25,000.00, which he could not meet. His first trial ended on November 16, 2009 with a hung jury. Id. at 14. Following a second trial, Almeida was found not guilty and

---

memorandum (*e.g.*, Zarrora, Zarroura, and Zarorra). For purposes of this Memorandum and Order, this Court will refer to the defendant as "Zarrora." Almeida does not provide information as to what kind of company Zarrora is, where it is located, or what kind of service it provides or product it creates.

was released from custody on April 7, 2010.[3]  Id. at  8, 16.

As the basis for his allegations of illegal conduct on the part of the defendants, Almeida focuses on some of the events that occurred on the night of the alleged armed robbery, and specifically on some of the interactions that occurred between Elbaba and Officer Rose.  The series of events, as alleged by Almeida, is as follows.

On August 7, 2008, Elbaba was robbed and called 911, reporting the incident.  Id. at  9, 13.  In the 911 call, Elbaba reported that the robber was an African-American who was wearing a T-shirt, a yellow sweatshirt, and a red hat.  Id. at 9, 13. Elbaba also reported that the robber got into a car, although he did not know the color of the car.  Id.  At some point, a "Be On the Look-Out" bulletin ("BOLO") was issued locally for a 90's Nissan Sentra, possibly maroon or black, with someone named Stephen Marion as the suspect.  Id. at  10.

Officer Rose responded to the robbery and met with Elbaba. Almeida claims that Elbaba provided to Rose a description of the robber that differed from the description he gave during his 911 call.  In this new description, Elbaba stated that the robber was an African-American male, possibly in his early 20's, approximately 5'8" tall, with a medium build, brown eyes, brown, bushy hair, and dark clothing.  Id. at 8.  Rose then showed a

---

[3]    Almeida apparently is in custody on other criminal charges.

picture to Elbaba of someone who had previously worked for Zarrora. Id. at 11. He then told Elbaba that he was going to show him a picture of the person who robbed him. He brought Elbaba to the police station and showed him a black and white photograph of Almeida -- a photo which was taken when Almeida had previously been at the police station. Id. at 11. At that point, Elbaba apparently identified Almeida as the robber.

Almeida claims that Rose also was responsible for issuing a BOLO for a 1995 green four-door Subaru Legacy, with the license plate number specified, identifying Almeida as the driver. Id. at 10. This information was based on an interaction Rose had with another police officer who had received the information from two witnesses, Bill Caine ("Caine") and Brian Stanko ("Stanko").[4]

Almeida claims that, at the grand jury proceedings, several pieces of information surfaced that support his claims for malicious prosecution and perjured testimony. First, he alleges Zarrora is responsible for the perjured testimony of its employee, Elbaba, who admitted to the grand jury that, when he talked to the police, he was still feeling the effects of drug use. Id. at 13. Additionally, Elbaba told the grand jury that he had not actually made the call to 911 despite the fact that, as Almeida claims, "[i]t was clearly him on the 911 phone [call]." Id.

---

[4] These two witnesses later denied having relevant information in this matter.

Second, Almeida claims that the FR Police Station is liable for the perjured testimony of Rose, one of its officers. He alleges that Rose used improper techniques in his attempt to obtain an identification of Almeida. Id. at 11. He asserts that the investigation techniques were so improper that it crossed the line into a malicious and deliberate misleading of Elbaba. Mem. at 9. Almeida also claims that, during grand jury proceedings, Elbaba stated he never actually gave his second description of the robber to Rose, meaning Rose testified falsely when claiming that Elbaba provided him with a differing description. Id. at 24. Further, Almeida contends that Rose withheld information provided by Caine and Stanko that conflicted with the information provided by Elbaba. Id. at 11.

Third, Almeida claims that the DA's Office is liable for malicious prosecution conducted by the Assistant District Attorney ("ADA"), named "Nadeau." Almeida claims that ADA Nadeau knew about the false information presented both by Rose and Elbaba and deliberately excluded from proceedings information which would have impeached Rose's testimony. Id. at 7.

From what can be discerned, Almeida makes only two claims under § 1983: perjury before the grand jury, and malicious prosecution. With respect to damages, Almeida is seeking $50,000.00 from each defendant for each year he was in custody.[5]

Along with the Complaint, Almeida filed a Motion for Leave

---

[5] He claims he was "in holding" for 19 months.

to Proceed *in forma pauperis* (Docket No. 2), a Motion to Appoint Attorney (Docket No. 3), and a Petition for Writ of Habeas Corpus *Ad Testificandum* (Docket No. 4).

DISCUSSION

I. The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Almeida's financial disclosures and prison account statement, this Court finds that he lacks sufficient funds to pay the filing fee for this civil action. Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) will be ALLOWED.

Because Almeida is a prisoner, he is obligated to make payments toward the $350.00 filing fee, pursuant to the Prison Litigation Reform Act. See 28 U.S.C. § 1915 (the *in forma pauperis* statute). Accordingly, it is hereby Ordered that:

    A.    Almeida is assessed an initial partial filing fee of $26.17, pursuant to 28 U.S.C. § 1915(b)(1)(A);[6]

    B.    The remainder of the fee $323.83 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

---

[6] The initial partial assessment represents 20% of the average monthly deposits in Almeida's prison account as reflected in his prison account statement, which does not cover a six-month period. This calculation was manually prepared based on the prison account statement submitted and is made without prejudice to Almeida seeking reconsideration based on certified account information in accordance with the formula set forth in 28 U.S.C. § 1915(b). Further, the initial partial assessment is made regardless of whether or not Almeida currently has sufficient funds in his prison account to pay. The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist." 28 U.S.C. § 1915(b)(1).

II. The Complaint is Subject to Preliminary Screening

Because Almeida is proceeding *in forma pauperis*, his complaint is subject to preliminary screening. The Prison Litigation Reform Act ("PLRA") Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996) contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[7] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[8]

In connection with this preliminary screening, Almeida's *pro se* complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad reading, however, this action is subject to dismissal in its

---

[7] Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

[8] Section 1915A authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

entirety for the reasons discussed below.

III. <u>Failure to Comply With Fed. R. Civ. P. 8</u>

Rule 8(a) requires a plaintiff to include in a complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see</u> <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "['] meaningful opportunity to mount a defense.'" <u>Diaz-Rivera v. Rivera-Rodriguez</u>, 311 F.3d 119, 123 (1st Cir. 2004)(quoting <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1172 (1st Cir. 1995)); <u>see</u> <u>Redondo-Borges v. U.S. Dept. of Housing and Urban Dev.</u>, 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." <u>Educadores Puertorriquenos en Action v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal ... [,] 'minimal requirements are not tantamount to nonexistent requirements.'" <u>Id.</u> (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988)).

Here, Almeida's complaint is confusing, somewhat illegible,

and fails to set forth the sum total of the defendants.  As noted above, he names three defendants (entities, instrumentalities, or agencies) in the caption of his complaint, but then also asserts claims against various individuals.

In light of the failure to set forth clearly each of his claims against identifiable defendants, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Apart from the pleading deficiencies under Rule 8, there are substantive legal deficiencies that bar all of his claims, as discussed below.

IV. The Fall River Police Station (or Department) is Not A Suable Entity

The claims against FR Police (an entity or agency) is subject to dismissal because the FR Police is not a suable entity.  Any claims against the FR Police are not cognizable because the FR Police has no legal existence or liability to suit separate from its city.  See Henschel v. Worcester Police Dept., Worcester, Mass., 445 F.2d 624, 624 (1st Cir. 1971)(holding that a police department is not a suable entity, stating: "[i]f a Police Department may be successfully sued, it is the city which will pay; the result is the same as suing the city...."); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989)(holding the Boston Police Department is not an independent legal entity; it is a department within the City of Boston).  See also Curran v. City of Boston, 777 F. Supp. 116, 120 (D. Mass.

1991).

Even if Almeida had named the City of Fall River as a defendant, his claims still would not be cognizable because he cannot hold the municipality liable under 42 U.S.C. § 1983 for the alleged perjured testimony of Officer Rose.  See 42 U.S.C. § 1983 ("doctrine of *respondeat superior* cannot be invoked in § 1983 cases"); Monell v. Dep't of Soc. Servs. of City of New York, 463 U.S. 658, 691 (1978)("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

V.  Claims Against Police Officer Rose

As noted above, Almeida has not identified clearly whether he is asserting claims against Officer Rose as an individual.[9] To the extent that his complaint can be construed to assert § 1983 claims against Rose, Almeida fails to set forth sufficient underlying facts to state any plausible civil rights violations. Almeida's allegations were that Rose responded to the robbery and took a description of the suspect from Elbaba that allegedly differed from Elbaba's description given in the 911 call.  Rose showed a picture black and white photograph to Elbaba, who then identified Almeida as the robber.  Almeida also contends that he used improper techniques in order to obtain an identification. Further, he alleges that Rose was responsible for putting out a

---

[9] Rose is not named as a party in the caption of the complaint, but is identified as a defendant in the attached Civil Action Cover Sheet and Local Category Sheet.

10

BOLO on Almeida, based on information obtained through another police officer.  Finally, Almeida claims that Rose perjured himself during the grand jury proceedings.  All of the these allegations are legal conclusions, without any underlying factual support.  See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009)("As this court noted in Maldonado v. Fontanes, [568 F.3d 263, 268 (1st Cir. 2009)] 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'")(brackets added; other citation omitted).  Putting aside the perjury allegation for a moment, the other contentions do not, standing alone, lead to the reasonable inference of civil rights violations.  At best, negligence of Rose might be inferred, but there are no underlying supporting facts asserted to set forth a claim for unconstitutional conduct.  Thus, the claims against Rose suffer Rule 8 pleading deficiencies.

Next, to the extent that Almeida's claims culminate in his assertion that Rose perjured himself before the grand jury, Almeida's § 1983 claim is not cognizable because Rose is entitled to absolute immunity for his testimony.  Courts generally grant police officers immunity from suits for damages claiming that a police officer offered perjured testimony.  See Briscoe v. LaHue,

460 U.S. 325, 326 (1983)(rejecting the contention that government officials who testify about the performance of their official duties may be held liable under § 1983).[10]

## VI. Claims Against Elbaba

Almeida does not appear to assert any claims against Elbaba based on his testimony. Nevertheless, to the extent that Almeida seeks to hold Elbaba liable for perjured testimony, he, too, would be entitled to absolute immunity. See Brisco, 460 U.S. at 335; Mitchell v. City of Boston, 130 F. Supp. 2d 201, 212 (D. Mass. 2001)("[I]mmunity should attach to conduct that is intended to be protected by the grant of absolute immunity, namely, the participation in the judicial process.").

Moreover, Elbaba cannot be held liable under § 1983 for alleged constitutional violations because there is no indication that he was a state actor. "Section 1983 supplies a private right of action against a person who, under color of state law,

---

[10] See also Williams v. City of Boston, 771 F. Supp. 2d 190, 203 (D. Mass. 2011)(where this Court noted the failure of defendants to address to what extent immunity extended for testimony given during pretrial matters, but noting that in Briscoe and in the United States Court of Appeals for the First Circuit's decision in Kyricopoulos v. Town of Orleans, 967 F. 2d 14 (1st Cir. 1002), the Supreme Court and the appeals court concluded that police officers were absolutely immune from suit under § 1983 for giving perjured testimony at a criminal trial and before a grand jury); Limone v. United States, 271 F. Supp. 2d 345, 366-67 (D. Mass. 2003)(distinguishing perjury committed by police officers from perjury suborned by police officers, noting that there exists some ambiguity as to whether Briscoe grants absolute immunity to officers who suborn perjury), aff'd in part sub nom, Limone v. Condon, 372 F3d 39 (1st Cir. 2004).

12

deprives another of rights secured by the Constitution or by federal law." <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 68 (1st Cir. Aug. 24, 2011)(quoting <u>Redondo-Borges v. U.S. Dep't of HUD</u>, 421 F.3d 1, 7 (1st Cir. 2005))(emphasis added). Accordingly, "[t]o make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." <u>Id.</u>

It is "[o]nly in rare circumstances" that private parties can be viewed as state actors. <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005). The United States Court of Appeals for the First Circuit employs a three-part test to determine whether a private party can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test. <u>Id.</u> at 5 <u>citing</u> <u>Rockwell v. Cape Cod Hospital</u>, 26 F.3d 254, 257 (1st Cir. 1994) <u>and</u> <u>Perkins v. Londonderry Basketball Club</u>, 196 F.3d 13, 18-21 (1st Cir. 1999). "Under the state compulsion test a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" <u>Estades-Negroni</u>, 412 F.3d at 5 (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991 (1982)). Under the nexus/joint action

13

test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Id. (quoting Bass v. Parkwood Hospital, 180 F.3d 234, 242 (5th Cir. 1999)). Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum, 457 U.S. at 1005). Here, Almeida fails to set forth any facts from which it reasonably may be inferred that Elbaba was a state actor under and one part of this three-part test.

Finally, to the extent that Almeida seeks to assert state law claims against Elbaba, he has not pled any state law claims in accordance with Rule 8. In any event, in the absence of a *bona fide* federal cause of action against Elbaba, this Court would decline to exercise supplemental jurisdiction over any state law claims. Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); see Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004) (citing

14

Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

VI.  Claims Against Zarrora, Inc. and/or Joseph Zarrora

Similarly, Almeida fails to set forth the basis for liability of either Zarrora, Inc. or its owner, Joseph Zarrora. The only connection between these parties and the alleged wrongful conduct is that Elbaba was Zarrora's employee. Almeida presents no circumstances from which any direct liability for civil rights violations reasonably could be inferred. As such, the claims are subject to dismissal for lack of *respondeat superior* liability.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).  In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 156 (quoting Carmona v. Toledo, 215

F.3d 124, 132 (1st Cir. 2000)). See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984)(liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

Additionally, Almeida has not set forth any facts from which these defendants could be considered state actors for § 1983 purposes. See state action discussion Part V, *supra*. Finally, as with Elbaba, in the absence of any *bona fide* federal cause of action, this Court would decline to exercise any state law claims against Zarrora, Inc. and/or Joseph Zarrora (to the extent there are any).

## VII. Claims Against the DA's Office

For the same reasons noted above, to the extent that Almeida's claims against the DA's office (the agency or instrumentality of the state) is based on a theory of *respondeat liability* for the alleged wrongful actions of ADA Nadeau, his claims are not cognizable under § 1983.

As an additional matter, Almeida's claims are not cognizable because the DA's Office, as an arm of the Commonwealth of Massachusetts, is entitled to Eleventh Amendment sovereign immunity. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978)(*per curiam*); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007); Miller

16

v. City of Boston, 297 F. Supp. 2d 361, 368-69 (D. Mass. 2003) (office of the district attorney entitled to Eleventh Amendment immunity). Nothing in Almeida's allegations reasonably could be construed as presenting claims as to which the Commonwealth of Massachusetts has waived its sovereign immunity to suit in federal court.[11]

VIII. Claims Against the Prosecutor (ADA Nadeau)

To the extent that Almeida seeks to assert claims for malicious prosecution and/or due process violations (based on the allegation that ADA Nadeau knew about the false information presented both by Rose and Elbaba and deliberately excluded from proceedings information which would have impeached Rose's testimony), his claims fail. First, prosecutors have absolute immunity in § 1983 suits for damages stemming from malicious prosecution. Meehan v. Town of Plymouth, 167 F.3d 85, 88 ("§ 1983 claim for malicious prosecution is barred where ... the state's tort law recognizes [as Massachusetts does] a malicious prosecution cause of action")(brackets added); Reid v. State of New Hampshire, 56 F.3d 332, 336 (absolute immunity of prosecutor was not forfeited because prosecutors withheld exculpatory evidence). See Imbler v. Pachtman, 424 U.S. 409, 430 (1976)

---

[11] Additionally, to the extent that Almeida is suing the "Bristol County's Government Agency's [sic]" as a separate defendant, his claims are not cognizable because the Bristol County Government would also be entitled to sovereign immunity.

17

(prosecutors are entitled to absolute immunity when they engage in activities that are "intimately associated with the judicial phase of the criminal process.").[12] The fact that Massachusetts recognizes a cause of action for the tort of malicious prosecution is fatal to a claim of constitutional violations under § 1983 for malicious prosecution. See Meehan, 167 F.3d at 88; Reid, 56 F.3d at 336.[13]

VIII. Order to Show Cause

For all of the reasons set forth above, Almeida's claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and/or (iii) and § 1915A. Accordingly, this action shall be dismissed within 42 days of the date of this Memorandum and Order unless Almeida demonstrates good cause in writing, including legal authority, why his claims should not be dismissed for the

---

[12] Prosecutors have been granted absolute immunity for appearing before a judge and presenting evidence in support of a search warrant, Burns v. Reed, 500 U.S. 478, 492 (1991), for their conduct before grand juries, see Lucien v. Preiner, 967 F.2d 1166, 1167 (7th Cir. 1992), cert. denied, 506 U.S. 893 (1992), for the knowing use of false testimony and the deliberate suppression of exculpatory evidence at trial, Imbler, 424 U.S. at 431 & n.34, for preparing and filing a motion for an arrest warrant, Kalina v. Fletcher, 522 U.S. 118, 129 (1997), and for failing to investigate adequately prior to filing charges, failing to turn over exculpatory material to the defense, and gathering additional information during the pendency of criminal proceedings, Broam v. Bogan, 320 F.3d 1023, 1031-33 (9th Cir. 2003).

[13] To the extent that Almeida asserts state tort claims of malicious prosecution against any of the Defendants, this Court declines to exercise supplemental jurisdiction over such claims.

reasons stated herein.  Any Show Cause Response is limited to seven (7) pages.  Almeida should not reiterate his claims contained in his complaint or supporting memorandum of law, but should address specifically the legal deficiencies noted herein (i.e., failure to comply with Rule 8, lack of state action, lack of *respondeat superior* liability under § 1983, sovereign immunity, witness immunity, and prosecutorial immunity).

Failure to comply with this directive will result in a dismissal of this action on the merits.

IX.  <u>The Motion for Appointment of Counsel</u>

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  However, a civil plaintiff lacks a constitutional right to free counsel.  <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  <u>Id.</u>  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  <u>Id.</u> at 24.

Here, notwithstanding that Almeida may not be able to afford to retain his own counsel, for the reasons noted above, the merits of Almeida's claims are dubious.  Thus, the expenditure of the scarce *pro bono* resources of the Court is not warranted.

Accordingly, Almeida's Motion for Appointment of Counsel (Docket No. 3) is <u>DENIED</u>.

X. <u>The Petition for Writ of Habeas Corpus *Ad Testificandum*</u>

Almeida seeks a writ of habeas corpus should this Court need to hear from him.  For the reasons stated above, no hearing is necessary at this time.  Accordingly, Almeida's Petition for Writ of Habeas Corpus Ad Testificandum (Docket No. 4) is <u>DENIED</u>.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion for Appointment of Counsel (Docket No. 3) is <u>DENIED</u>;

3. Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum (Docket No. 4) is <u>DENIED</u>; and

4. This action shall be dismissed within 42 days of the date of this Memorandum and Order unless plaintiff demonstrates good cause in writing, including legal authority, why his claims should not be dismissed for the reasons stated herein.

SO ORDERED.

<u>/s/ Patti B. Saris</u>
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE