UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE A. ALMEIDA, | ) |
|     Plaintiff, | ) |
| | ) |
|        v. | ) |
| | ) |
| | )  CIVIL ACTION NO. 12-11476-PBS |
| | ) |
| POLICE OFFICER JOHN ROSE, | ) |
|     Defendant. | ) |
| | ) |

MEMORANDUM AND ORDER

December 9, 2013

SARIS, CHIEF, U.S.D.J.

## I.  Introduction

A.  Procedural Background

On July 30, 2012 , plaintiff Jose A. Almeida ("Almeida")
filed this action under 42 U.S.C. § 1983 ("§ 1983") alleging that
perjured testimony was used against him and that he was
maliciously prosecuted for armed robbery.[1]  He named as
defendants the Bristol District Attorney's office, the Fall River
Police Station, and Zarrora, Inc.  He also listed the "Bristol

---

[1]      Section 1983 of Title 42 creates a cause of action for
persons who are denied a federally protected right by a person
acting under color of state law.  See, e.g., Baker v. McCollan,
443 U.S. 137 (1979)(constitutional deprivations); Maine v.
Thiboutot, 448 U.S. 1 (1980)(statutory deprivations).  "Section
1983 'is not itself a source of substantive rights, but merely
provides a method for vindicating federal rights elsewhere
conferred.'"  Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D.
Mass. 2006)(quoting Graham v. Connor, 490 U.S. 386, 393-94
(1989)).  "It is well established that 'a litigant complaining of
a violation of a constitutional right does not have a direct
cause of action under the United States Constitution but [rather]
must utilize 42 U.S.C. § 1983.'"  Wilson v. Moreau, 440 F. Supp.
2d 81, 92 (D.R.I. 2006)(quoting Arpin v. Santa Clara Valley
Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)).

County's Government Agency" as a defendant.  Almeida's

allegations in the original complaint are detailed in this

Court's Memorandum and Order (Docket No. 6 at 2-6) and need not

be iterated in their entirety here, but are incorporated by

reference.[2]

On August 13, 2012, this Court issued a Memorandum and Order

(Docket No. 6) directing Almeida to demonstrate good cause why

this action should not be dismissed because of various legal

impediments.  These impediments included: (1) the failure to

state plausible claims against the defendants in accordance with

---

[2]     In brief, on August 7, 2008, a man named Arif Elbaba
("Elbaba"), an employee of Zarrora, Inc., was robbed of over
$9,000.00.  He called 9-1-1 and gave a description of the robber.
Thereafter, Police Officer John Rose ("Officer Rose") responded
to the call and met with Elbaba and obtained a description of the
robber.  Almeida claimed that Elbaba gave a different description
than the one given during the 9-1-1 call.  Officer Rose took
Elbaba to the police station and showed him a black and white
photograph of Almeida; Elbaba identified him as the robber.
Officer Rose then issued a "Be On the Look-Out" ("BOLO") bulletin
based on information provided by two other police officers who
had received information from two witnesses.  That information
conflicted with Elbaba's description of the robber.  On September
13, 2008, pursuant to an arrest warrant that had been requested
by Officer Rose, Almeida was arrested and then charged with armed
robbery.  He remained in custody because he could not meet bail.
After two trials, Almeida was found not guilty and was released
from custody.  Almeida alleged that Zarrora, Inc., as Elbaba's
employer, was liable for Elbaba's perjured testimony concerning
the 9-1-1 call, and that the Fall River Police Station, as
Officer Rose's employer, was liable for his improper
investigation techniques, (*i.e.*, the misleading of Elbaba during
the photograph identification process).  Further, Almeida alleged
that the Assistant District Attorney knew about the false
identification information presented by Officer Rose and Elbaba,
but excluded information that would have impeached Officer Rose's
testimony.

the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure; (2) the failure to state a claim against the Fall River Police Station because it was not a suable entity, and because it could not be held liable under § 1983 under a *respondeat superior* theory of liability; (3) the failure to state a § 1983 claim against Elbaba because absolute immunity applied to allegedly perjured testimony, and because he was not a state actor; (4) the failure to state a claim against Zarrora, Inc. because there is no *respondeat superior* liability under § 1983; and (5) the failure to state a claim against the District Attorney's Office because of the lack of *respondeat superior* liability of the prosecutor, and because of sovereign immunity. Further, this Court noted that the prosecutor also would be entitled to absolute prosecutorial immunity for his actions or inactions in connection with Almeida's criminal prosecution.

On October 15, 2012, Almeida filed a Response (Docket No. 10), and three days later filed an amended complaint (Docket No. 11).  After reviewing Almeida's response, which asserted claims against Officer Rose, and after reviewing the amended complaint, this Court issued a further Memorandum and Order (Docket No. 14) on October 12, 2012, dismissing all of Almeida's claims against all defendants except the claims against Officer Rose.  This Court permitted the case to proceed as to Officer Rose, without prejudice to the defendant filing a Motion for a More Definite Statement under Fed. R. Civ. P. 12(e), or some other appropriate

3

motion after service was made.  A summons was issued and Almeida
was instructed to effect service of process within 120 days of
its issuance.  The United States Marshal Service was directed to
effect service as directed by Almeida, and to advance the costs
of service.

On January 2, 2013, Almeida filed a "Clarified Amended
Complaint (Docket No. 18), along with a Notice of Appeal (Docket
No. 17).[3]  Thereafter, on January 22, 2013, this Court issued a
Memorandum and Order (Docket No. 21) in which Almeida's request
for reconsideration of the dismissal of certain claims was
denied, and his Motion for Leave to File a Clarified Amended
Complaint also was denied.  The proposed clarified amended
complaint was stricken, and this Court deemed the amended
complaint (Docket No. 11) to be the operative pleading in this
case.

Undeterred, Almeida filed letters seeking relief.  On
February 19, 2013, this Court issued a further Memorandum and
Order (Docket No. 28) denying Almeida's second request for
reconsideration of the dismissal of all defendants except Officer
Rose.  This Court also prohibited Almeida from filing any further
amended complaints absent permission of the Court, and only after
Officer Rose had filed a responsive pleading.

---

[3]      On February 15, 2013, the United States Court of
Appeals ordered the appeal be voluntarily dismissed.  See Almeida
v. Fall River Police Station, et al., No. 13-1028 (1st Cir.
2013).  Mandate entered on February 14, 2013.

On March 28, 2013, the summons was returned executed, noting service was made on March 26, 2013 and was given to Officer Linette Dispirito.  <u>See</u> Docket No. 29.  Weeks later, on April 10, 2013, Officer Rose filed a Motion to Dismiss (Docket No. 30) and a Memorandum in Support (Docket No. 31).

On July 1, 2013, Almeida filed an Opposition with exhibits (Docket No. 37).  In that Opposition, Almeida also moved to amend his complaint once again in order to cure the deficiencies.

B.   <u>Defendant's Arguments in The Motion to Dismiss</u>

Officer Rose's Motion to Dismiss was made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Rule 8 for failure to state a cognizable claim, and Local Rule 4.1 for failure to serve process as directed.

1.   <u>Almeida Presents Conclusory Allegations Without Factual Support</u>

In his supporting Memorandum, Officer Rose first argues that Almeida's cause of action against him is based on his alleged actions concerning identification procedures and possibly his testimony before the grand jury, and for malicious prosecution. Officer Rose argues that the allegations fail to set forth any actions or facts that have constitutional implications; rather, the amended complaint (Docket No. 11) contains legal conclusions without sufficient underlying facts to determine what he did that violated any of Almeida's protected rights.

2.   <u>Failure to Effect Service of Process Timely</u>

Next, Officer Rose argues that service of process was not timely made, since a summons had issued on October 25, 2012 and service of process was not made within the 120-day period as directed.  Rather, defendant argues service of process instead was made after <u>151</u> days.  The defendant, however, does not interpose any objection to the service of process made on Officer Linette Dispirito in lieu of Officer Rose himself.

3.   <u>Section 1983 Claims are Time-Barred</u>

Apart from the argument that Almeida's claims do not comport with Rule 8 and do not set forth facts to support claims for constitutional violations, Officer Rose also asserts that Almeida's § 1983 claims are time-barred.

Although section 1983 provides a federal cause of action, the length of the limitations period is drawn from state law. <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007); <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005).  Section 1983 borrows the forum state's statute of limitations for personal injury tort actions.  <u>See Harrington v. City of Nashua</u>, 610 F.3d 24, 28 (1st Cir. 2010); <u>Rodriguez-Garcia v. Municipality of Caguas</u>, 354 F.3d 91, 96 (1st Cir. 2004).  In Massachusetts, that sets a three-year statute of limitations for § 1983 claims.  <u>See</u> Mass. Gen. Laws ch. 260, § 2A; <u>Owens v. Okure</u>, 488 U.S. 235, 239 (1989); <u>Centro Medico</u>, 406 F.3d at 6.

Here, the alleged wrongful conduct occurred on August 7, 2008 when Officer Rose's actions went beyond the scope of his duty and deliberately harmed Almeida.  Further, the defendant contends that the limitations period was not tolled while the criminal charges were pending against Almeida.  Id. at 392-97.

Thus, Officer Rose argues that although Almeida claimed that the wrongful conduct continued through April 7, 2010, he sets forth no facts to support this arbitrary date, which appeared to be the date of Almeida's second criminal trial.  Thus, defendant contends that Almeida was required to file suit by August 7, 2011; however, this action was filed almost one year after expiration of the statute of limitations (July 30, 2012).

4.   Malicious Prosecution Claim

With respect to Almeida's malicious prosecution claim, Officer Rose argues that Almeida fails to make clear which constitutional provision provides the foundation for his § 1983 claim.  Defendant argues that there is no Fourteenth Amendment due process violation under § 1983 based on malicious prosecution, citing, inter alia, Albright v. Oliver, 510 U.S. 266, 271 (1994), Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999), and Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999).

5.   Qualified Immunity

Finally, Officer Rose argues that, even if a § 1983

7

malicious prosecution claim was not foreclosed, Almeida's § 1983 claim fails nevertheless because he is shielded by qualified immunity.  He argues that a reasonable police officer in August 2008 would not have understood that he could be liable for § 1983 malicious prosecution for his actions, and that the contours of such a claim were not clearly established.

C.   Plaintiff's Opposition and Proposed Amended Complaint

Almeida's Opposition is not entirely legible or coherent, and largely sets forth boilerplate statements of law and legal argument concerning Rule 15 of the Federal Rules of Civil Procedure, Massachusetts procedures, and state law (not applicable to this case).  From what can be discerned, Almeida asserts claims under: (1) Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); (2) the Massachusetts Declaration of Rights; (3) the Massachusetts Civil Rights Act; and (4) the Massachusetts Tort Claims Act.  He also asserts claims for malicious prosecution pursuant to § 1983, as well as claims for false imprisonment and false arrest.

With respect to the response to the defendant's Motion to Dismiss, Almeida first argues that this Court should take all of his allegations as true, give him the benefit of the doubt, and permit him to amend his amended complaint pursuant to Rule 15. He concedes that his previously-filed amended complaint "needs a more defined complaint" but objects to dismissal in light of Rule

15.  Opposition (Docket No. 37) at 4, ¶ 7.  He claims that he is entitled to amend his complaint once as of right even though the defendant has filed a Motion to Dismiss.  Alternatively, he argues that amendment should be freely allowed by the Court.

Second, Almeida seeks to present good cause explaining why service of process on Officer Rose was not made within the 120-day period.  He points to his requests for reconsideration of the dismissal of all other defendants except for Officer Rose, and to the Court's Order directing his Notice of Appeal to be transmitted to the First Circuit, along with the record.  He contends that upon receipt of this Court's February 23, 2013 ruling, he was diligent in that he immediately took steps to have the summons served on Officer Rose.  He asserts it is within this Court's discretion to permit the late service.

Third, with respect to the issue of the statute of limitations, Almeida argues that he discovered, through investigation and during the criminal proceedings prior to the not guilty verdict in April, 2010, that the testimony of Officer Rose was false.  He contends that the statute of limitations should not be triggered until he was released from custody in April, 2010, particularly where he could not have pursued a civil suit if he was found guilty.

Fourth, Almeida claims that Officer Rose is not entitled to qualified immunity because "the contours of such a claim are

established clearly.  It is quite logical to accept the reasoning of plaintiff's claim in that the contours were not defined adequately in plaintiff's second complaint.  In plaintiff's clearified [sic] complaint plaintiff aims to clearly state Rose's wrongdoing."  Opposition (Docket No. 37 at 8, ¶ 23).  Almeida seeks damages for the deliberate indifference in arresting him, including damages from the time of arrest until he was finally discharged by the state court.

Finally, along with the response, Almeida attached a separate document entitled "Amended Complaint to Officer John Rose's Motion." (Docket No, 37 at 11).  He reiterates many of the factual allegations contained in the original complaint and his amended complaint, and expands on his factual allegations.

Specifically, Almeids alleges that in Officer Rose's police report filed in August, 2008, he stated that Elbaba had told him that at approximately 7:00 p.m. he had arrived at his friend Joseph Zarraro's house, as he was taking care of the house while his friend was out of the country.  He had just opened the garage door when he was approached by an unidentified black male, who told him that a friend had told him that Elbaba sold tobacco products.  He asked for Elbaba's cell phone number, and as Elbaba was in the process of doing so, the unidentified black male pulled out a silver pistol in the garage and pulled the slide of the pistol to the rear and released it.  He pointed the pistol at

Elbaba's pants pocket and told him to give him all of his money
or he was going to kill him.  Elbaba emptied his pockets and his
wallet.  The unidentified black male grabbed the large roll of
money and ran down the street.  Elbaba lost sight of him and ran
to a neighbor's house for help.  He asked the neighbor to call 9-
1-1.  He then described the alleged robber to dispatcher Kevin
Resendes.  He described the robber as a black male wearing a
yellow sweatshirt, heading on foot and then jumping into a
vehicle, but he did not know its make, model, or color.  The
dispatcher then put out a BOLO.  Thereafter, Elbaba gave a
different description of the robber to Officer Rose, describing
the robber as a black male, possibly in his early twenties,
approximately 5'8" tall, medium build, brown eyes, brown bushy
hair, and wearing dark colored clothing.

Almeida next contends that Officer Rose's report states that
he spoke to two witnesses, Brian Stanko and Bill Caine.[4]  They
reported seeing a black male in his early twenties with brown
hair and possibly dread locks, unshaven, wearing a red hat, dark

---

[4]    Further into the proposed amended complaint, Almeida
states that Officer Rose spoke with three witnesses.  Almeida
claims that later, Brian Stanko told an investigator and e-mailed
the prosecutor to say that he was not sure if Almeida was the
person he described because the person was wearing a hat or hood.
He also stated the car was red, blue, or green, a small Toyota
Corolla or Saturn, and he could not identify the person from a
photo array.  Similarly, Bill Caine also could not identify the
suspect, and told Officer Rose that he did not think Almeida was
the suspect.  Almeida claims Office Rose falsely testified that
these two witnesses were never shown a photo lineup.

colored sweatshirt, and dark gray sweatpants, running down the road, then getting into a car, described as a small, early 90's green four-door sedan with minor damage to its rear bumper. Officer Rose's report stated that after speaking with Elbaba and the two witnesses, he put out a BOLO with a description of the suspect and the vehicle.  This was done about an hour after the first BOLO was put out by the dispatcher.

Next, while conducting further investigation of the armed robber, fellow police officers discovered that the suspect called Elbaba earlier that day, and that person had an associate named Jose Almeida, who was known to have been involved with a firearm and known to drive a 1995 green Subaru Legacy.

Officer Rose contacted Elbaba in order to have him participate in a photo array at the Fall River Police Station. He let Elbaba look at a photo array of six suspects, and explained to Elbaba that the array may or may not have a photo of the suspect.  While Elbaba was looking at the photos, Almeida alleges that Officer Rose pulled his photo aside and stated that the picture of Almeida was the suspect involved in the armed robbery.  Elbaba then signed and dated the photo, and then all of the photos were collected and placed into evidence by Officer Rose.  At that point, Officer Rose requested that a warrant issue for Almeida for the armed robbery.

Almeida alleges there was no basis for Officer Rose to put

out the BOLO or for requesting an arrest warrant because nobody had identified Almeida as the man who committed the robbery, and the Green Subaru was not a vehicle in his name.[5]  He further alleges that Officer Rose falsely stated in his police report that it was Elbaba who had looked at the six photos and pulled out Almeida's photo identifying him as the robber.  Almeida claims that by taking such actions, Officer Rose caused his false imprisonment through deliberate indifference, unconstitutional conduct, negligence, and deceit.

After Almeida's arrest, a dangerousness hearing was held in October, 2008, at which time Elbaba testified to taking drugs before speaking with Officer Rose in August, 2008.  He also stated that Officer Rose told Elbaba while on their way to the police station that he was going to show Elbaba the person who robbed him.  Officer Rose then called up Almeida's picture on the computer that was located in his police cruiser, and Elbaba stated he was not 100% sure.[6]

---

[5]     Almeida claims that when the car was located in Fall River weeks later, it was searched and dusted for fingerprints; however, there was no evidence of Almeida's DNA, nor any evidence of his property.

[6]     Almeida claims that Elbaba's testimony was that he followed Officer Rose down to the police station in his own car, with two cars in front of him and two police cruisers behind him, and that this occurred about half an hour after the robbery.  In light of this, Almeida questions whether there was any identification made of him, and claims that in later proceedings, Elbaba testified that he never gave Officer Rose a description of the suspect.

Next, Almeida alleges that Officer Rose's police report was used in Grand Jury proceedings in order to procure the Indictment, and that Officer Rose testified to Elbaba's identification, but failed to testify that the two witnesses stated that they could not identify Almeida.

Finally, Almeida includes the assertion that Officer Rose is not entitled to qualified immunity because, as a trained police officer, he most likely knew about protecting the constitutional rights of citizens.  Additionally, he alleges that Officer Rose had to know that filing a false police report was illegal, and had to know that he was violating Almeida's civil rights: (1) when he told Elbaba that he was going to show him a photo (from his computer in the cruiser) of the person that robbed him; (2) when he provided false evidence in support of a request for an arrest warrant; and (3) when he gave false testimony regarding the description of the suspect allegedly provided by Elbaba.

In Count I of the proposed second amended complaint (Docket No. 37 at 11), Almeida alleges constitutional violations under § 1983, and asserts claims under the Massachusetts Tort Claims Act based on negligence, deceit, deliberate indifference, and insubordination.  He also alleges that by requesting an arrest warrant, Officer Rose caused him to be subjected to false imprisonment and intentional infliction of emotional distress. Almeida alleges violations of his First, Fourth, Fifth, Eighth,

14

Thirteenth, Fourteenth Amendment rights, as well a violation of the Declaration of Rights under Article 12 of the Massachusetts Constitution.  He complains of the conditions of his confinement and of his commitment to the Bridgewater State Hospital for mental health evaluation and commitment for, *inter alia*, a suicide attempt.

As relief, Almeida seeks compensatory and punitive damages against Officer Rose under "§ 1983 '(MTCA)'" in the amount of $2 million.  Proposed Amended Complaint (Docket No. 37 at 21, ¶ 47). He also seeks to expunge his criminal record arising out of the Fall River Bristol County court.[7]

## II.  Discussion

A.   <u>Plaintiff's The Motion to Second Amend the Complaint and the Defendant's Motion to Dismiss</u>

Almeida seeks to amend his amended complaint (Docket No. 11)

---

[7]     Also attached to the proposed second amended complaint was the dispatch sheet with handwritten notations (Docket No. 37-1 at 22), a portion of the transcript of the probable cause hearing with handwritten notations (Docket No. 37-1 at 23), a copy of the 9-1-1 call transcript (Docket No. 37-1 at 26), a Fall River Police Department Summons Report (Docket No. 37-1 at 27), a portion of the transcript of Almeida's first trial setting forth Elbaba's testimony (Docket No. 37-1 at 28), a portion of the transcript of the probable cause hearing involving Elbaba's testimony (Docket No. 37-1 at 35), a Dispatch Sheet (Docket No. 37-1 at 42), a portion of a transcript of Officer Rose's testimony (Docket No. 37-1 at 43), a copy of an e-mail from Brian Stanko to David Reback (Docket No. 37-1 at 49), a copy an e-mail from Bill Caine to David Reback (Docket No. 37-1 at 50), copies of portions of a report of a private detective (Docket No. 37-1 at 51), and a portion of the transcript of Officer Rose's testimony (Docket No. 37-1 at 53).

on the grounds that the proposed second amended complaint will cure the pleading deficiencies in the amended complaint and thus defeat the defendant's Motion to Dismiss.  He asserts that he may amend as of right because the defendant filed a Motion to Dismiss.  Alternatively, he seeks leave of Court to second amend.

On May 6, 2013, Almeida filed a Letter/Motion for an Extension of Time to File a Response/Reply (Docket No. 35). Incorporated in Almeida's Letter/Request was a request to file an amended complaint.  On May 9, 2013, this Court allowed the motion by margin endorsement.

Accordingly, since this Court already has permitted Almeida this opportunity, his Motion for Leave to File a Second Amended Complaint (incorporated in his Opposition, Docket No. 37, at 11-59) will be ALLOWED.  The Second Amended Complaint will be the operative pleading in this action.  No further amendments shall be permitted.

In light of this ruling, the defendant's Motion to Dismiss (Docket No. 30) is DENIED without prejudice to renew based on the Second Amended Complaint.  Any Motion to Dismiss the Second Amended Complaint shall be filed within 14 days of the date of this Memorandum and Order

As an additional matter, the defendant's request for dismissal of this action for failure to effect service within the 120 days as directed is now moot, in view of the Second Amended

Complaint.  In any event, this Court will not dismiss this action

based on untimely service (by 31 days), where Almeida is

proceeding *pro se* and has demonstrated good cause for the late

service; he has shown sufficiently that, despite his

misunderstanding of the status of his case, upon learning of the

status, he took immediate action to have process served by the

United States Marshal.

B.    *Sua Sponte* Dismissal of Certain Claims in the Second Amended
      Complaint is Warranted

       Notwithstanding the above, the Second Amended Complaint does

not comport with the pleading requirements of Rule 8, and

attempts to state claims that are not cognizable.  The defendant

will, no doubt, file a Motion to Dismiss the Second Amended

Complaint, raising identical issues in the original motion.

       Accordingly, in order to streamline matters and narrow the

issues to be addressed by the defendant, certain claims raised in

the Second Amended Complaint shall be dismissed *sua sponte*, for

failure to state a claim upon which relief may be granted, for

the reasons discussed herein.

       1.    Plaintiff Fails to State a Cognizable Bivens Claim

       Almeida makes a cursory reference to his claims under Bivens

v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

U.S. 388 (1971).  "The Bivens doctrine allows plaintiffs to

vindicate certain constitutionally protected rights through a

private cause of action for damages against federal officials in

17

their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008)(emphasis in underline added).  Here, Almeida does not set forth any federal governmental action that would implicate Bivens liability.  Accordingly, to the extent that he seeks to assert a Bivens claim, it will be DISMISSED.

    2.   Claim Under Massachusetts Declaration of Rights

    Almeida also makes a reference to violations of Article 12 of the Massachusetts Declaration of Rights.  To the extent that Almeida seeks to assert a cause of action under Article 12, he fails to state a claim upon which relief may be granted. This is because there is no private cause of action directly under the Massachusetts Constitution.  See Martino v. Hogan, 37 Mass. App. Ct. 710, 720-21 (1994)(holding there is no authority upon which to base a damages claim or an equitable claim directly under the State's Declaration of Rights, and stating that the existence of the Massachusetts Civil Rights Act ("MCRA") occupies the field, similar to that of 42 U.S.C. § 1983).

    Thus, to the extent Almeida seeks to bring a state constitutional claim, the vehicle for doing so is through the MCRA.  See Mass. Gen. Laws ch. 12, § 11I.  Nevertheless, even if Almeida had stated that his claim was under the MCRA, it is not cognizable.  To set forth a plausible claim under the MCRA, Almeida must allege that he exercised or enjoyed rights secured by the Constitution or federal or state law, that Officer Rose

interfered with, or attempted to interfere with such rights, and that the interference or attempted interference was by "threats, intimidation or coercion." <u>Swanset Development Corp. v. Taunton</u>, 423 Mass. 390, 395 (1996).  The Massachusetts Supreme Judicial Court has held that the state civil rights act does not create a vast constitutional tort, stating that "the legislature has explicitly limited this remedy to situations where the deprivation of secured rights occurs by 'threats, intimidation or coercion.'" <u>Bell v. Mazza</u>, 394 Mass. 16, 18 (1985).  <u>See Deas v. Dempsey</u>, 403 Mass. 468 (1988).  <u>See also Planned Parenthood League of Mass. v. Blake</u>, 417 Mass. 467, 474, <u>cert. denied</u> 513 U.S. 868 (1994); <u>Sarvis v. Boston Safe Deposit and Trust Co.</u>, 47 Mass. App. Ct. 86, 91-92 (1999); <u>Redgrave v. Boston Symphony Orchestra</u>, 399 Mass. 93, 100-101 (1987)).

Here, Almeida fails to set forth any facts showing a violation of his civil rights that included the use of "threats, intimidation or coercion" by Officer Rose.  In the absence of any such facts there can be no violation of the MCRA.  <u>Longval v. Commissioner of Correction</u>, 404 Mass. 325, 333 (1989)(direct violation of a person's rights does not by itself involve threats, intimidation and coercion and thus does not implicate the Act); <u>Layne v. Superintendent, MCI Cedar-Junction</u>, 406 Mass. 156, 158 (1989)(evidence of threats, intimidation or coercion are an essential element to a claim under the state civil rights

act); <u>Bally v. Northeastern University</u>, 403 Mass. 713, 719-720 (1989).

Accordingly, any claim by Almeida pursuant to the Massachusetts Declaration of Rights or the MCRA will be <u>DISMISSED</u> *sua sponte*.

3.    <u>Failure to State a Plausible Claim Under the Massachusetts Tort Claims Act</u>

Next, Almeida purports to bring a claim pursuant to the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258. He appears to be under the mistaken belief that an MTCA violation constitutes a § 1983 violation.  In any event, to the extent that Almeida seeks to raise an MTCA claim, he fails to state a plausible claim upon which relief may be granted.

The MTCA permits recovery for liability against <u>public employers</u>, including the Commonwealth of Massachusetts, and serves as a waiver of sovereign immunity under certain circumstances.[8]  The MTCA does <u>not</u> encompass suits against public

---

[8]    Mass. Gen. Laws ch. 258, § 2 provides, in relevant part:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable to levy of execution on any real and personal property to satisfy judgment, and shall not be liable for interest prior to judgment or for punitive damages or for any amount in excess of one hundred thousand dollars....

employees, such as Officer Rose, the only defendant in this action.  In other words, liability for negligence attaches to the public employer, and not the employees.[9]  Additionally, to the extent that Almeida asserts intentional torts, such as false arrest, false imprisonment, or intentional infliction of emotional distress under the MTCA, such claims also are not cognizable because the MTCA does not apply to <u>intentional</u> torts, and therefore there is no waiver of sovereign immunity as to those claims.  Mass. Gen. Laws ch. 258, § 10(c).

As an additional legal impediment to any MTCA claim, Almeida has not set forth any basis to believe that he has complied with the administrative presentment requirements.  Before filing suit,

---

<u>Id.</u>

[9]     Mass. Gen. Laws ch. 258, § 2 provides that:

The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim, and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment; provided, however, that a public employee shall provide reasonable cooperation to the public employer in the defense of any action brought under this chapter.

<u>Id.</u> <u>See</u> <u>Fantini v. Salem State College</u>, 2007 WL 922883, *6 (D. Mass. 2007)(Zobel, J.)(the MTCA immunizes public employees for negligent or wrongfl actions or omissions while in the scope of the employee's office or employment).

a party must first have presented his claim to the executive
officer of the public employer and received a final decision on
the claim.  Mass. Gen. Laws ch. 258, § 4.

Finally, unless this Court exercises supplemental
jurisdiction, this Court lacks jurisdiction over any MTCA claim
brought in federal court because the Commonwealth of
Massachusetts (or its agencies) has not waived its sovereign
immunity to suit in federal court.[10]

In light of all of the above, plaintiff's MTCA claims are
dismissed *sua sponte*.

---

[10]   See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir.
(Mass) 2003) ("By enacting the Massachusetts Tort Claims Act, the
Commonwealth has not waived its Eleventh Amendment immunity to
suit in federal court."); See Rivera v. Massachusetts, 16 F.
Supp. 2d 84-87-88 (D. Mass. 1998) (citing Irwin v. Comm'r of
Dep't of Youth Servs., 338 Mass. 810, 448 N.E.2d 721, 727 (1983)
(answering question certified by the United States District Court
for the District of Massachusetts, to the effect that
jurisdiction conferred on the superior court under the MTCA,
Mass. Gen. Laws ch. 258, § 3 is exclusive); Irwin v. Calhoun, 522
F. Supp. 576 (D.C. Mass. 1981)(Garrity, J.)(certifying question).
See generally Rivera v. Com. of Mass. 16 F. Supp. 2d 84, 88 (D.
Mass. 1998)(discussing federal court jurisdiction over MTCA
claims, noting that "apart from declining to waive its Eleventh
Amendment immunity, a state has no power to deprive federal
courts of diversity or supplemental jurisdiction over state law
causes of action"; MTCA claims may be brought against
municipalities where the jurisdiction of the superior court is
not exclusive);  Hindes v. FDIC, 137 F.3d 148, 168 n.15 (1st Cir.
1998) ("a state statute cannot be applied so as to limit a
federal court's supplemental jurisdiction."); Hardemon v. City of
Boston, 144 F.3d 24, 28 (1st Cir. 1998).

4.   <u>Malicious Prosecution Claims</u>

    A.   <u>Malicious Prosecution Claims Under the Fourteenth Amendment</u>

Almeida cannot state a plausible § 1983 claim based on due process violations under the Fourteenth Amendment.  "The First Circuit holds that where a State recognizes the common-law torts of false arrest and malicious prosecution (as does Massachusetts), a plaintiff is barred from pursuing a due process claim (either substantive or procedural) under § 1983 under the federal court." <u>Dore v. Velazquez</u>, 2011 WL 398190 (D. Mass. 2011) <u>citing</u> <u>Reid v. New Hampshire</u>, 56 F.3d 332, 336 n.8, 341 (1st Cir. 1995).  Thus, under First Circuit, "a malicious prosecution claim must be pursued through the state tort remedy even if it might be equally cognizable as a 42 U.S.C. § 1983 claim under the Constitution." <u>Hofland v. LaHaye</u>, 2011 WL 2490959, *11 (D. Me. 2011) <u>citing</u> <u>Reid</u>, 56 F. 3d at 336 n.8, 341.[11]  <u>See, e.g.</u>, <u>Reed v. City of Chicago</u>, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996).

---

    [11]   In <u>Hofland</u>, 2011 WL 2490959, *11, the Court indicated that, since state law recognized torts of false arrest and malicious prosecution, "those claims should have been analyzed under state law, rather than § 1983.  Given an adequate state-law remedy for a procedural due process violation, no § 1983 claim lies." <u>Id.</u> <u>citing</u> <u>Reid</u>, 56 F. 3d at 336 n.8, 341 (other citations omitted)).

B.   <u>Malicious Prosecution Claims Based on the Fourth
Amendment</u>

Notwithstanding the lack of a plausible § 1983 malicious
prosecution claim grounded in the Fourteenth Amendment, the First
Circuit has left unresolved the question whether the malicious
prosecution claims under the Fourth Amendment context are
cognizable.  <u>Harrington</u>, 610 F.3d at 30 (where the First Circuit
stated that  "[i]t remains an unanswered question whether a
malicious prosecution claim is cognizable under the Fourth
Amendment and section 1983."); <u>Nieves v. McSweeney</u>, 241 F.3d 46,
54 (1st Cir. 2001); <u>Diaz-Colon v. Toledo-Davila</u>, 2013 WL 485879,
*8+ (D.P. R. 2013).  In <u>Harrington</u>, the First Circuit presumed,
without deciding the issue, that a malicious prosecution claim
can embody a Fourth Amendment violation, where there was a
deprivation of liberty pursuant to a legal process, consistent
with a Fourth Amendment seizure.  <u>Harrington</u>, 610 F.3d at 30.
<u>See</u> <u>Moreno-Medina v. Toledo</u>, 458 Fed. Appx. 4, 7, 2012 WL 118575,
*3 (1st Cir. 2012)(unpublished decision again assuming, without
deciding, that a malicious prosecution claim can embody a Fourth
Amendment violation under § 1983).  In such a claim, the
plaintiff must show more than the elements of the common law
tort, but must also show a deprivation of liberty accompanying
the prosecution that amounted to a Fourth Amendment seizure.  <u>Id.</u>
The Court stated that typically, this takes the form of an arrest
warrant or a subsequent charging document, where the post-

arraignment deprivation comprises the seizure).  <u>Id.</u>  See <u>Parks</u>
<u>v. Town of Leicester</u>, 2012 WL 2088926, *6 (D. Mass. 2012)(where
plaintiff's arrest was clearly a "seizure" the relevant inquiry
was whether the police officer's application for a criminal
complaint caused the arrest).  Here, because Officer Rose is
alleged to have applied for the arrest warrant, and because
Almeida alleges that he remained in pretrial custody for a
substantial period of time, this Court cannot find that Almeida
has not stated a plausible claim.

The defendant fails to address the issue of malicious
prosecution under the Fourth Amendment.  Rather, the defendant
simply asserts he is entitled to qualified immunity and that the
statute of limitations bars the claim.

C.   <u>Qualified Immunity</u>

Qualified immunity shields government officials performing
discretionary functions from "liability for civil damages insofar
as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1992).  Qualified
immunity applies "unless the official's conduct violated a
clearly established constitutional right." <u>Pearson v. Callahan</u>,
129 S.Ct. 808, 816 (2009).  In evaluating whether qualified
immunity is applicable, a court must look at the facts alleged
that state a constitutional violation, and, if so, whether that

right was clearly established at the time of the alleged violation.  Maldonado v. Fontanes, 568 F.3d 263, 268-69 (2009) (citing Pearson, 129 S.Ct. at 815-16).  Looking objectively, the inquiry is whether a reasonable officer "would have believed that he was not violating the Plaintiff's Constitutional rights in taking the action at issue."  Estrada v. Rhode Island, 594 F.3d 56, 65 (1st Cir. 2010).

Here, with respect to the assertion that Officer Rose is entitled to qualified immunity, at this juncture, given Almeida's factual allegations as true, particularly with respect to the photo identification process, this Court cannot find that Officer Rose would be entitled to qualified immunity.

Should the defendant seek to renew the qualified immunity defense in a Motion to Dismiss the Second Amended Complaint, he must address this issue in further detail.

   D. Statute of Limitations on the Malicious
     Prosecution Claim

To the extent the defendant asserts that the § 1983 malicious prosecution claim also is time-barred, this Court cannot concur based on this record, as additional factual information needs to be presented to determine the last date upon which Officer Rose allegedly committed the wrongful acts during the judicial process.

Moreover, the continuing violation doctrine allows a plaintiff to seek damages for acts occurring outside the

26

limitations period if those acts are part of an ongoing course of unlawful conduct that continued into the limitations period. <u>See O'Rourke v. City of Providence</u>, 235 F.3d 713, 730-31 (2001). It is most commonly invoked in employment discrimination cases; indeed, "[t]he classic example of a continuing violation is a hostile work environment." <u>Tobin v. Liberty Mut. Ins. Co.</u>, 553 F.3d 121, 130 (1st Cir. 2009). The plaintiff must state a claim by alleging a series of separate acts that collectively add up to unlawful conduct even though each act might not be actionable on its own. <u>Id.</u> The plaintiff may therefore include within his claim acts that occur outside the limitations period, since the violation is caused by the entire course of the defendant's conduct. By contrast, ongoing injuries that stem from a single unlawful act do not state a continuing violation. <u>Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez</u>, 659 F.3d 42, 51 (1st Cir. 2011). "Although the continuing violation doctrine is most commonly seen in the employment context, it has also been applied to § 1983 cases...." <u>See, e.g.</u>, <u>Clark v. Clarke</u>, 2013 WL 1144901, *8 (D. Mass. Mar. 18, 2013) <u>citing</u> <u>Schonarth v. Robinson</u>, 2008 WL 510193, at *6 (D.N.H. 2008).[12]

---

[12]    "In such situations, some courts have applied a tripartite framework, considering: (1) whether the separate acts constituted the same type of conduct, (2) whether the separate acts recurred frequently, and (3) whether the acts had a degree of permanence triggering a plaintiff's duty to assert his rights.

27

Accordingly, should the defendant seek to renew the statute of limitations defense in a Motion to Dismiss the Second Amended Complaint, he must address this issue in further detail.

   5.   Claim of False Arrest/False Imprisonment

      A.   False Imprisonment

A claim of false imprisonment is "entirely distinct" from the tort of malicious prosecution. Wallace, 549 U.S. 390. The Supreme Court has made it clear that false imprisonment claims consist of "detention without legal process." Wallace, 549 U.S. 389. Thus, false imprisonment "ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a magistrate or arraigned on charges." Id. By contrast, the claim of malicious prosecution does not involve detention without legal process; rather, it involves the assertion of "wrongful institution of legal process." Id. at 390.

Thus, to the extent that Almeida is asserting a claim for false imprisonment, the claim is not cognizable because it is barred by three-year statute of limitations applicable to suits under § 1983. Although Almeida asserts that his claims did not become ripe until he was released from detention, this assertion is misplaced. The Supreme Court rejected this type of argument, stating that once legal process was initiated, the statute begins

---

Clarke, 2013 WL 1144901 at *8 citing Foster v. Morris, 208 F. App'x 174, 178 (3d Cir. 2006).

to run from that date.  Id.  Here, Almeida's false imprisonment
claim became ripe in September, 2008, when Almeida claims to have
been arraigned.  Since Almeida did not file suit until more than
three years later (July 30, 2012), it is time barred.

Almeida attempts to circumvent the statute of limitations by
alleging that under Heck v. Humphrey, 512 U.S. 477 (1994), his
claims would not have been ripe until he concluded his criminal
proceedings and received a favorable termination.  That notion
also is misplaced.

The Wallace Court recognized that combining the holding on
the statute of limitations issue with Heck's Favorable
Termination Rule would seemingly result in the conclusion that,
in situations where a prisoner is being held pursuant to legal
process but prior to conviction (hence no possibility of
favorable termination), suit could not be brought even though the
statute of limitations had started to run.  To reconcile Wallace
and Heck, the Court concluded that if a plaintiff files a claim
related to rulings that *will likely be made* in a pending or
anticipated criminal trial, a district court may stay the civil
action until the criminal case (or likelihood of criminal case)
has ended.  Id. at 393-394.  See Crooker v. Burns, 544 F. Supp.
2d 59, 64-65 (D. Mass. 2008).  By staying the action, the court
avoids having to guess whether a ruling in the civil suit would
impugn or imply the invalidity of a future conviction, which

would require dismissal under <u>Heck</u>.

      B.  <u>False Arrest</u>

Similarly "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."  <u>Id.</u> at 390 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, pp. 888 (5th ed. 1984).

In light of this, Almeida's false arrest claim under § 1983 also is time-barred for the same reasons discussed above.

Accordingly, this Court will <u>DISMISS</u> Almeida's false arrest and false imprisonment claims *sua sponte* as time-barred.

### III.  Conclusion

Based on the foregoing, it is hereby Ordered that:

1.    Plaintiff's Motion to File a Second Amended Complaint (Docket No. 37) is <u>ALLOWED</u>.  The Second Amended Complaint contained in Docket No. 37, pages 11-59 shall constitute the operative pleading in this action.  No further amendments shall be permitted;

2.    Plaintiff's claims arising under: (1) <u>Bivens</u>; (2) the Massachusetts Declaration of Rights; (3) the Massachusetts Civil Rights Act; (4) the Massachusetts Tort Claims Act; (5) the § 1983 malicious prosecution claims grounded in the Fourteenth Amendment;(6) the false imprisonment claim; and (7) the false arrest claim, are <u>DISMISSED</u> *sua sponte* for failure to state claims upon which relief may be granted; and

3.    The only remaining claim is the § 1983 malicious prosecution

claim grounded in the Fourth Amendment;[13]

4.    Defendant's Motion to Dismiss (Docket No. 10) is <u>DENIED</u>
      without prejudice;

5.    Any Motion to Dismiss the Second Amended Complaint shall be
      filed within 14 days of the date of this Memorandum and
      Order.


SO ORDERED.

                              /s/ Patti B. Saris
                              PATTI B. SARIS
                              CHIEF, UNITED STATES DISTRICT JUDGE

---

[13]This Court will not construe Almeida's second amended complaint (Docket No. 37 at 11) as asserting any state law claims apart from those addressed in this Memorandum and Order.