```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

JOSE A. ALMEIDA,                     )
     Plaintiff,                      )
                                     )
          v.                         )
                                     ) CIVIL ACTION NO. 12-11476-PBS
                                     )
POLICE OFFICER JOHN ROSE,            )
     Defendant.                      )
                                     )
```

                         MEMORANDUM AND ORDER

                         September 24, 2014

SARIS, C.J.

## I. Introduction

Plaintiff Jose A. Almeida brings this action in which he alleges that he was wrongfully prosecuted for armed robbery, a charge for which he was ultimately acquitted. He claims that, because he was arrested without probable cause, he was unlawfully detained from his arrest on September 15, 2008 through his eventual acquittal at a second trial in April 2010.

The only claim that remains is one under 42 U.S.C. § 1983 against Fall River Police Officer John Rose for malicious prosecution in violation of the plaintiff's right under the Fourth Amendment not to be arrested without probable cause. See Dec. 9, 2013 Memorandum and Order (docket entry #39, pp. 30-31). Officer Rose has filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court GRANTS the motion.

## II. Factual Background[1]

On August 7, 2008, Officer Rose and other officers of the Fall River Police Department were dispatched to Saxon Street after having received a report of an armed robbery. Officer Rose interviewed the victim, Afif Elbaba, who stated that he had received a call from his friend Troy Parker. Parker stated that either he or a friend was interested in purchasing some tobacco from Elbaba. Elbaba agreed and arrived at the designated location at the appointed time. He reported that he was then robbed at gunpoint by a black male, who took $9,000 in cash and ran away.

The victim then went to a neighbor's house, where a 911 call was made by the neighbor. During later hearings and trials, Elbaba offered differing testimony as to whether he or the neighbor spoke during this call and what description, if any, of the perpetrator was relayed to the 911 operator. Officer Rose reported that Elbaba described the perpetrator as a black male, possibly in his early twenties, approximately 5'8" tall, medium build, brown eyes, brown bushy hair, and wearing dark clothing. The defendant also wrote in his report that he spoke to three witnesses in the area of the crime. One stated that he had seen

---

[1] The operative pleading consists of pages 11-59 of the plaintiff's second amended complaint (docket entry #37) ("SAC"). See Dec. 9, 2013 Memorandum and Order (docket entry #39), at 30. The allegations of the SAC are discussed in some length in the Court's earlier memorandum and order of December 13, 2013 (docket entry #39). The Court will assume the reader's familiarity with this order and will repeat only those allegations that are relevant to the adjudication of Officer Rose's motion to dismiss.

2

a small dark colored Nissan or Japanese make four-door sedan traveling at a high rate of speed. Two others reported that they had seen a black male in his early twenties, with brown hair and possibly dread locks, unshaven, wearing a red hat, dark colored sweat shirt, dark gray sweat pants, and running.

After speaking to Elbaba and the witnesses, the police put out a BOLO (Be On the Look-Out) with a description of the suspect and vehicle. Two other officers discovered that Parker, who was known to the Fall River Police Department, "had an associate by the name of Jose Almeida," who was also known to the Fall River Police Department. According to Officer Rose's report, Almeida drove a 1995 green Subaru Legacy and had been involved with an incident with a firearm. A BOLO was put out for Almeida. Officer Rose and other officers then attempted to locate Parker and Almeida but did not find them at their last known addresses.

Later that evening, Elbaba came to the Fall River police station to view a photo array. At some point prior to the photo array, Elbaba spoke with Officer Rose in the patrol car. Almeida alleges that at this time, Officer Rose told Elbaba that he was going to show him a picture of the man who robbed him. The plaintiff implies that Officer Rose then proceeded to show Elbaba a picture of Almeida on a computer in the police car. See SAC, ¶¶ 20, 45. Almeida submitted a page of the transcript of the probable cause hearing in which Elbaba offers testimony about this interaction:

> [Elbaba]:. . . this is Troy. I know him. So he said, okay, I'm gonna show – show you the guy who robbed

3

>     you.  You know, [indiscernible at 2:39:24 p.m. -
>     speech of witness] I said well, to be honest, 90
>     percent.
>
> Q:  Was this at the car or where was this?
>
> A:  No, Troy is in the car.
>
> Q:  Okay.
>
> A:  But -- this guy is in the -- police station.
>
> Q:  <u>Okay.  So you -- At some point -- Just so I'm
>     clear, you went and looked at a computer in a car
>     and they asked you if that was Troy?</u>
>
> A:  <u>Yes.</u>
>
> Q:  <u>And you saw a picture on the computer of Troy?</u>
>
> A:  <u>Yes.  At the same minute, I told them this is
>     Troy, you know, --</u>
>
> Q:  Okay.
>
> A:  -- no doubt.
>
> Q:  So sometime later, you went down to the station?
>
> A:  No, I went - when the conversation was, you know,
>     after that, they took me to the -- I mean, I
>     follow -- I follow the cop to the police station.
>     And then, you know, they show me the --
>
> Q:  At some point did you look at some pictures?
>
> A:  Yes.
>
> Q:  Okay.  And you showed you the pictures?

SAC, Ex. G (docket entry #37-1, p. 14) (second alteration in original; emphases added).  The plaintiff also submitted a report of a private investigator who interviewed Elbaba.  According to this document, Elbaba unequivocally stated that Officer Rose showed him a photo of Parker on the computer in the police car:

> I then asked Elbaba if he had been shown any photos of
> any other males, prior to his having gone to the Police

4

> Station to view photos, to which he stated that the
> Police had shown him (1) one photo on a computer in the
> Police Car, which was a photo of Troy Parker, and asked
> him if this was the Troy Parker that had called him
> before the robbery, to which he told them that it was.

SAC, Ex. (docket entry #37-1, p. 14). The report does not contain any suggestion that, while in a police car, the police showed Elbaba a photo of Almeida.

Inside the police station, Elbaba identified Almeida as the perpetrator in a photo array consisting of six black and white photos. During a probable cause hearing, Elbaba testified that the officer stated, "I'm going to show you some pictures, and if you know the guy who robbed you, just sign the pictures and tell me which one." SAC, Ex. G (docket entry #37-1, p. 38). Elbaba also testified that he was not "100 percent sure" of the photo identification. SAC, Ex. D. (docket entry #37-1, p. 2).

## III. Discussion

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint--and any documents attached to it[2]--must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in

---

[2] In order to assess the merits of a Rule 12(b)(6) motion, a court should consider the complaint and any documents attached to it. See Trans-Spec v. Caterpillar, 524 F.3d 315, 321 (1st Cir.2008).

5

favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court may dismiss a complaint when the alleged facts "are merely consistent with a defendant's liability." Id. In other words, "the complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir.2010) (internal citations and quotations omitted).

**B. Fourth Amendment Malicious Prosecution Claim**

The First Circuit has recognized a Fourth Amendment right to be free from malicious prosecution. See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99-101 (1st Cir. July 17, 2013). A plaintiff may bring § 1983 Fourth Amendment malicious prosecution claim if he can establish that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id. at 101 (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)).

Here, the plaintiff has sufficiently pled that Officer Rose caused his seizure or arrest and that criminal proceedings terminated in his favor. However, Almeida has not made allegations from which the Court may reasonably infer that his arrest was unsupported by probable cause.

Almeida goes to great length to point out the discrepancies between what he believes are the true facts and those in Officer Rose's report. The plaintiff sees great significance-and unfairness-in what he views as contradictions. These issues include whether or not Elbaba ever provided a description of the suspect to Officer Rose (about which Elbaba himself gave contradictory evidence); whether there was sufficient basis to put out either BOLO based on inconsistent reports from witnesses about the color and make of the perpetrator's car and his appearance; whether Elbaba or the neighbor to whom he ran spoke with the 911 operator; whether witnesses were shown a photo array; whether his criminal history merited him being identified as a known associate of Parker with a history of a gun incident; exactly how and when Elbaba went to the police station for the photo array; and, whether Elbaba was in Officer Rose's patrol car to look at a photo at the crime scene or outside the police station just before viewing the photo array. Almeida claims that all of these discrepancies (some of which are due to Elbaba making contradictory statements in the course of a single proceeding or in different proceedings) indicate that he was arrested without probable cause.

However, none of these allegations suggest that Almeida was arrested without probable cause in light of the fact that Elbaba--who had seen and spoken to the perpetrator--made a positive photo identification of the plaintiff. It was the photo identification of the plaintiff that resulted in his arrest and nothing leading to that photo identification rose to the level of a constitutional violation.

Almeida alleges that Officer Rose told Elbaba in his patrol car that he was going to show him a photo of the person that robbed him and then proceeded to show him a picture of Almeida. If this were the case, then Officer Rose's actions may have tainted the photo array. However, Elbaba's own testimony, which the Court cannot ignore because Almeida attached it to the Second Amended Complaint, does not support this characterization of the events. As is often the case in witness testimony, Elbaba's testimony was not completely linear. But he makes it clear in his testimony in the probable cause hearing that Officer Rose showed him a picture of Parker in the patrol car, not Almeida. Further, the report of the private investigator indicates that Elbaba told him that he was shown a picture of Parker, not Alemeida, in the police car.

Even if Officer Rose's introduction to the photo array was that he was going to show Elbaba the man who robbed him, the plaintiff has not suggested that Officer Rose indicated to Elbaba in any fashion that Almeida's photo was that of the perpetrator. That there were only six photos and that they were black and

8

white is of no consequence.  See United States v. Brennick, 405 F.3d 96, 99-100 (1st Cir. 2005); United States v. Maguire, 918 F.2d 254, 263 (1st Cir. 1990).

## III. Conclusion

For the above-stated reasons, the defendant's motion to dismiss is GRANTED.

SO ORDERED.

                                     /s/ Patti B. Saris
                                    PATTI B. SARIS
                                    CHIEF, UNITED STATES DISTRICT JUDGE